Electronically Filed - St Louis County - January 08, 2015 - 10:42 AM

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| FEDERAL INSURANCE COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | Cause No. |
| vs. | ) | |
| | ) | Division: |
| SKMDV HOLDINGS, INC., | ) | |
| | ) | |
| Serve at: Registered Agent | ) | |
| Michael Moseler | ) | |
| 4235 Austin Ridge Dr. | ) | |
| St. Charles, MO 63304 | ) | |
| and | ) | |
| | ) | |
| WILLIAMS & CONNOLLY LLP | ) | |
| | ) | |
| **Hold Service** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| HEPLERBROOM, LLC | ) | |
| | ) | |
| **Hold Service** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| GREEN JACOBSON, P.C. | ) | |
| | ) | |
| Serve at: Martin M. Green | ) | |
| 7733 Forsyth Boulevard | ) | |
| St. Louis, MO 63105 | ) | |
| and | ) | |
| | ) | |
| JACOBSON PRESS & FIELDS, P.C | ) | |
| | ) | |
| Serve at: Joe D. Jacobson | ) | |
| 3946 Hartford St. | ) | |
| St. Louis, MO 63116-9310 | ) | |
| and | ) | |
| | ) | |
| JOHN DOE 1-5 | ) | |
| | ) | |
| Defendants. | ) | |

Electronically Filed - St Louis County - January 08, 2015 - 10:42 AM

**PETITION FOR INTERPLEADER AND DECLARATORY JUDGMENT**

COMES NOW, Plaintiff Federal Insurance Company, by and through its undersigned counsel, in accordance with Missouri Rule of Civil Procedure 52.07 and R.S.Mo. § 527.010 files its Petition for Interpleader and Petition for Declaratory Judgment, and states as follows:

1. This action results from a Judgment entered in the Circuit Court of St. Louis County, Missouri captioned *SKMDV Holdings, Inc. v. Green Jacobson, P.C.*, Cause No. 11SL-CC02664. ("Lawsuit")

**PARTIES AND JURISDICTION**

2. Plaintiff Federal Insurance Company is a foreign company organized and existing pursuant to the laws of the State of Indiana, with its principal place of business and corporate headquarters in the State of New Jersey.

3. Defendant SKMDV Holdings, Inc. is a Missouri corporation, with its principal place of business located in St. Charles County, Missouri.

4. Defendant Williams & Connolly LLP is a District of Columbia Limited Liability Partnership, with its principal place of business located in Washington, D.C. and law firm retained to defend Green Jacobson, P.C.in the Lawsuit with outstanding legal fees and expenses.

5. Defendant HeplerBroom, LLC is a Missouri Limited Liability Company, with its principal place of business located in the City of St. Louis, Missouri and law firm retained to defend Green Jacobson, P.C. in the Lawsuit with outstanding legal fees and expenses.

6. Defendant Green Jacobson, P.C. is a Missouri Professional Corporation, with its principal place of business located in St. Louis County, Missouri.

7. Defendant Jacobson, Press, Fields, P.C. is a Missouri Professional Corporation, with its principal place of business located in St. Louis County, Missouri and law firm retained to defend Green Jacobson, P.C. in the Lawsuit with outstanding legal fees and expenses.

8. Defendants John Doe 1-5 are currently unknown parties including court reporting services, copy service companies, trial consultants, and other similar agencies, companies retained on behalf of Green Jacobson P.C. to provide legal related services in the Lawsuit

9. This Court has jurisdiction of this action under R.S.Mo. §§ 478.070 and 527.010.

10. Venue in this Court is proper pursuant to R.S.Mo. § 508.010(2).

## RELEVANT INSURANCE POLICY

11. Plaintiff Federal Insurance Company issued to Green Jacobson, P.C. a defense within limits professional liability insurance policy under Policy No. 8221-4933, with a policy period of January 1, 2011 through January 1, 2012. The Policy limits are $5,000,000.00, inclusive of Defense Costs, per Claim. (Exhibit A)

## ALLEGATIONS AND FACTUAL BACKGROUND

12. Defendant SKMDV Holdings, Inc. obtained a judgment against Defendant Green Jacobson, P.C. in the amount of $10,500,000.00 on November 12, 2014. (Exhibit B) The Judgment was amended on January 6, 2015. (Exhibit C)

13. On or about November 17, 2014, Defendant SKMDV Holdings, Inc. filed its Execution/Garnishment/Sequestration Application and Order against Garnishee Federal Insurance Company. (Exhibit D)

14. In its Execution/Garnishment/Sequestration Application and Order against Garnishee Federal Insurance Company, Plaintiff seeks to "garnish all debts and obligations owed to Green Jacobson, P.C., including specifically all amounts owed to or on behalf of Green Jacobson, P.C. under Policy No. 8221-4933." (Exhibit D)

15. Under the terms of its Policy No. 8221-4933, Federal Insurance Company is obligated to pay Losses and Defense Costs of its insured Defendant Green Jacobson, P.C., including the costs for appeal, from the remaining proceeds of Policy No. 8221-4933.

16. Defendant Green Jacobson, P.C. has filed its Notice of Appeal of Cause No. 11SL-CC02664.

17. In this action, Plaintiff Federal Insurance Company seeks interpleader of the remaining proceeds of its insurance Policy No. 8221-4933, pursuant to Rule 52.07 of the Missouri Rules of Civil Procedure, as there are multiple claimants seeking to recover from the proceeds of the insurance policy, which may expose Plaintiff Federal Insurance Company to double liability.

18. This action also seeks declaratory relief pursuant to R.S.Mo. § 527.010, for the purpose of determining the obligations and priority of payment for professional liability insurance Policy No. 8221-4933 issued by Plaintiff Federal Insurance Company to Green Jacobson, P.C. (Exhibit A)

## COUNT I – DECLARATORY JUDGMENT

19. For Count I, Plaintiff Federal Insurance Company restates and reasserts the allegations contained in paragraphs 1 through 18 as if more fully set out herein.

20. Plaintiff Federal Insurance Company issued to Green Jacobson, P.C. a defense within limits professional liability insurance policy under Policy No. 8221-4933, with a policy period of January 1, 2011 through January 1, 2012. (Exhibit A)

21. The applicable limits under Policy No. 8221-4933 are as follows:

   **DECLARATIONS**

   **ITEM 4**.        **LIMITS OF LIABILITY** (inclusive of **Defense Costs**):

   (A) $ 5,000,000.00        maximum limit of liability each **Claim**
   (B) $ 25,000.00           maximum aggregate limit of liability under this Policy for all disciplinary and grievance proceedings
   (C) $ 5,000,000.00        maximum aggregate limit of liability under this Policy for all **Claims**.

   (Exhibit A)

22. Under the terms of its Policy No. 8221-4933, Federal Insurance Company is obligated to pay the costs of defense of its insured Defendant Green Jacobson, P.C., including the costs for appeal, from the proceeds of Policy No. 8221-4933, as stated in the following policy language:

   **VIII.   LIMIT OF LIABILITY**

   (D) **Defense Costs** are part of and not in addition to the Limits of Liability set forth in ITEM 4 of the Declarations, and payment by the Company of **Defense Costs** shall reduce and may exhaust such Limits of Liability.

   (Exhibit A)

23. Policy No. 8221-4933 defines "Defense Costs" as:

**II.     DEFINITIONS**

**Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees ( including attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees, overhead or benefits of any **Insured**) incurred in defending any Claim and the premium for appeal, attachment or similar bonds; provided that the Company will have no obligation to procure or provide any bonds.  Defense Costs do not include the regular or overtime wages, salaries or fees of the directors, officers or employees of the Company.

(Exhibit A)

24. Pursuant to Policy No. 8221-4933 Defense Costs shall be paid on a current basis as outlined in the following language:

**XII.     DEFENSE AND SETTLEMENT**

The Company shall, upon written request, advance on a current basis **Defense Costs** owed under this Policy. As a condition of any payment of **Defense Costs** before the final disposition of a **Claim**, the Company may require a written undertaking on terms and conditions  satisfactory to it guaranteeing the repayment of any **Defense Costs** paid on behalf of any **Insured** if it is finally determined that this Policy would not cover **Loss** incurred by such **Insured** in connection with such **Claim**.

(Exhibit A)

25. As such, Plaintiff Federal Insurance Company is obligated to pay Defense Costs, on a current basis, out of the Limits of Liability and this represents a continued and ongoing obligation.

26. On November 12, 2014, Defendant SKMDV Holdings, Inc. obtained a judgment against Defendant Green Jacobson, P.C. in the amount of $10,500,000.00.

27. On or about November 17, 2014, Defendant SKMDV Holdings, Inc. filed its Execution/Garnishment/Sequestration Application and Order against Garnishee Federal Insurance Company.  (Exhibit D)

28. In its Execution/Garnishment/Sequestration Application and Order against Garnishee Federal Insurance Company, Plaintiff seeks to "garnish all debts and obligations owed to Green Jacobson, P.C., including specifically all amounts owed to or on behalf of Green Jacobson, P.C. under Policy No. 8221-4933." (Exhibit D)

29. Under Policy No. 822-4933, Federal Insurance Company "Loss" is defined as:

**II.     DEFINITIONS**

**Loss** means the amount that an **Insured** becomes legally obligated to pay as a result of any covered **Claim**, including but not limited to damages (including punitive or exemplary damages if and to the extent that such punitive or exemplary damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages, provided such jurisdiction has a substantial relationship to the relevant **Insured**, to the Company, or to the **Claim** giving rise to the damages), judgments, settlements, pre-judgment and post-judgment interest and **Defense Costs**.

(Exhibit A)

30. As such, Plaintiff Federal Insurance Company is obligated to pay Defendant SKMDV Holdings, Inc.'s judgment out of the Limits of Liability.

31. Finally, pursuant to Policy No. 822-4933, Plaintiff Federal Insurance Company shall have no obligation to pay Loss or Defense Costs after the applicable limit of liability has been exhausted by the payment of a judgment as stated in the following policy language:

**XII.     DEFENSE AND SETTLEMENT**

(E) The Company shall have no obligation to pay **Loss**, including **Defense Costs**, or to defend or continue to defend any **Claim**, after the Company's applicable Limit of Liability with respect to such Claim has been exhausted by the payment of **Loss**. If the Company's Limit of Liability is exhausted by the payment of **Loss** prior to the expiration of this Policy, the Policy premium will be deemed fully earned.

32. Federal Insurance Company ascertains that it holds proceeds in the amount of $2,558,240.02 that remain from the limits of liability of Policy No. 8221-4933. (Exhibit E)

33. Therefore, Plaintiff Federal Insurance Company seeks declaratory relief for the purpose of determining the obligations and priority of payment for professional liability insurance Policy No. 8221-4933 issued by Plaintiff Federal Insurance Company to Green Jacobson, P.C.

34. As such, Plaintiff Federal Insurance Company requests declaratory judgment under R.S.Mo. § 527.010 determining and declaring as follows:

   a. The obligations and priority of payment of the remaining proceeds of Policy No.8221-4933 to Defendants;

   b. Plaintiff be directed as to its rights and obligations to Defendants including payment of ongoing Defense Costs that are being incurred and request properly audited bills be paid from the Policy proceeds;

   c. If the Court deems no party is authorized to payment, a declaration that any remaining proceeds be returned to the Policy for the benefit of Federal's insured, Green Jacobson, P.C.;

   d. The Court enter an Order staying the Execution/Garnishment/ Sequestration Application and Order against Garnishee Federal Insurance Company; and

   e. Plaintiff receives what other and further relief this Court deems just and proper.

WHEREFORE, Plaintiff Federal Insurance Company, respectfully requests that this Court enter an Order of Declaratory Judgment with regard to the above, discharge it from any other or further liability to Defendants, and for any other and further relief as this Court deems just and proper.

## COUNT II - INTERPLEADER

35. For Count II, Plaintiff Federal Insurance Company restates and reasserts the allegations contained in paragraphs 1 through 34 as if more fully set out herein.

36. Defendant SKMDV Holdings, Inc. obtained a judgment against Defendant Green Jacobson, P.C. in the amount of $10,500,000.00 on November 12, 2014.  (Exhibit B & C)

37. On or about November 17, 2014, Defendant SKMDV Holdings, Inc. filed its Execution/Garnishment/Sequestration Application and Order against Garnishee Federal Insurance Company.  (Exhibit D)

38. In its Execution/Garnishment/Sequestration Application and Order against Garnishee Federal Insurance Company, Plaintiff seeks to "garnish all debts and obligations owed to Green Jacobson, P.C., including specifically all amounts owed to or on behalf of Green Jacobson, P.C. under Policy No. 8221-4933."  (Exhibit D)

39. Federal Insurance Company ascertains that it holds proceeds in the amount of $2,558,240.02 that remain from the Limits of Liability of Policy No. 822-4933. (Exhibit E)

40. Under the terms of its Policy No. 8221-4933, Federal Insurance Company is obligated to pay Losses and Defense Costs of its insured Defendant Green Jacobson, P.C., including the costs for appeal, from the remaining proceeds of Policy No. 8221-4933.

41. Defendant Green Jacobson, P.C. has filed its Notice of Appeal of Cause No. 11SL-CC02664 to the Missouri Court of Appeals, Eastern Division.

42. Due to the nature and insuring language of Policy No. 8221-4933, Federal is obligated to continue to pay ongoing costs and attorney's fees relating to the appeal. However, payment of future Defense Costs, including, but not limited to attorneys' fees, will erode the remaining proceeds of the insurance policy.

43. Due to the nature and insuring language of Policy No. 8221-4933, payment of Defendant SKMDV Holdings Inc.'s judgment will exhaust the Limits of Liability.

44. As such, all Defendants may seek to recover from the remaining proceeds of Policy No. 822-4933, which may expose Plaintiff Federal Insurance Company to double liability.

45. Plaintiff Federal Insurance Company seeks discharge from any potential liability to all Defendants regarding the remaining proceeds of Policy No. 822-4933.

46. Plaintiff Federal Insurance Company requests direction from the Court as to method of depositing a check with this Court, in the amount of $2,558,240.02 and is ready, willing and able to do so.

47. As such, Plaintiff Federal Insurance Company requests the following relief:

    a. The Court enter an Order of Interpleader determining that Defendants are adverse claimants to the funds deposited to the Court and to each other;

    b. The Court enter an Order requiring any Defendants who claim damage to interplead and establish their respective claims in this action;

c. If the Court deems no party is authorized to payment, a declaration that any remaining proceeds be returned to the Policy for the benefit of Federal's insured, Green Jacobson, P.C.;

d. The Court enter an Order staying the Execution/Garnishment/Sequestration Application and Order against Garnishee Federal Insurance Company; and

e. Plaintiff receives what other and further relief this Court deems just and proper.

WHEREFORE, Plaintiff Federal Insurance Company, respectfully requests that this Court enter an Order of Interpleader, discharge it from any other or further liability to Defendants, and for any other and further relief as this Court deems just and proper.

CHILDRESS AHLHEIM CARY LLC

BY: ___/s/ DAVID T. AHLHEIM___
DAVID T. AHLHEIM #MO50853
CRAIG R. KLOTZ    #MO58850
1010 Market Street, Suite 500
St. Louis, MO 63101
Phone:  (314) 621-9800
Fax:      (314) 621-9802
dahlheim@jchildresslaw.com
cklotz@jchildresslaw.com
Attorneys for Plaintiff Federal Insurance
Company

# 15SL-CC00057

## *CHUBB PRO LAWYERS*
## *PROFESSIONAL LIABILITY*

**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey 07059

**DECLARATIONS**

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated under the
laws of Indiana, herein called the Company

Capital Center, 251 North Illinois, Suite 1100
Indianapolis, IN 46204-1927

Policy Number: 8221-4933

**NOTICE: THIS IS A CLAIMS MADE POLICY, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD," OR ANY EXTENDED REPORTING PERIOD. THE LIMIT OF LIABILITY TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS," AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION AMOUNT. IN NO EVENT WILL THE COMPANY BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE APPLICABLE LIMIT OF LIABILITY. THE COVERAGE AFFORDED UNDER THIS POLICY DIFFERS IN SOME RESPECTS FROM THAT AFFORDED UNDER OTHER POLICIES. READ THE ENTIRE POLICY CAREFULLY.**

ITEM 1.   **FIRM -NAME AND ADDRESS:**
Green Jacobson, P.C.
7733 Forsyth Blvd.
Suite 700
Saint Louis, MO 63105

ITEM 2.   **PREDECESSOR FIRM(S) -NAME AND ADDRESS:**
N/A

ITEM 3.   **POLICY PERIOD:**
(A)   Inception Date: January 1, 2011

(B)   Expiration Date: January 1, 2012
at 12:01 a.m. both dates at the Address in ITEM 1.

ITEM 4.   **LIMITS OF LIABILITY (inclusive of Defense Costs):**

(A) $     5,000,000.00   maximum limit of liability each **Claim**
(B) $        25,000.00   maximum aggregate limit of liability under this Policy for all disciplinary and grievance proceedings
(C) $     5,000,000.00   maximum aggregate limit of liability under this Policy for all **Claims**.

ITEM 5.   **RETENTION AMOUNT: $75,000.00 each Claim or Related Claims.**

ITEM 6.   **EXTENDED REPORTING PERIOD:**

(A)   Additional Period        (B)   Additional Premium
1 Year                               150 % of Annual Premium
2 Year                               225 % of Annual Premium
3 Year                               300 % of Annual Premium

ITEM 7.   **PENDING OR PRIOR DATE:** January 1, 2010, at 12:01 a.m. at the Address in ITEM 1.

ITEM 8.   **PREMIUM: $ 55,000.00**

14-02-9303 (Ed. 04/2004)                     Page 1 of 14


EXHIBIT
A

## CHUBB PRO LAWYERS
## PROFESSIONAL LIABILITY

These Declarations, the completed signed Application and this Policy with Endorsements shall constitute the contract between the Insured and the Company.

In witness whereof, the Company issuing this Policy has caused this Policy to be signed by its authorized officers, but it shall not be valid unless also signed by a duly authorized representative of the Company.

**FEDERAL INSURANCE COMPANY**

*W. Andrew Macon*

_____
**Secretary**

01/03/11
_____
**Date**

_____
**President**

_____
**Authorized Representative**

14-02-9303 (Ed. 04/2004)          Page 2 of 14

Electronically Filed - St Louis County - January 08, 2015 - 10:42 AM

In consideration of payment of the premium and subject to the Declarations, limitations, conditions, provisions and other terms of this Policy, the Company and the **Insured** agree as follows:

## I. INSURING CLAUSE

The Company shall pay **Loss** on behalf of an **Insured** on account of any **Claim** first made against such **Insured** during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed by the **Insured** before or during the **Policy Period**.

## II. DEFINITIONS

**Application** means all signed applications, including attachments and other materials submitted therewith or referenced or incorporated therein, submitted by or on behalf of the **Insured** to the Company for this Policy or for any policy of which this Policy is a direct or indirect renewal or replacement. All such applications, attachments and materials are deemed attached to, incorporated into and made a part of this Policy.

**Claim** means:

(1) any of the following:

    (a) a written demand or written request for monetary damages or non-monetary relief;

    (b) a written demand for arbitration;

    (c) a civil proceeding commenced by the service of a complaint or similar pleading; or

    (d) a formal civil administrative or civil regulatory proceeding (including a disciplinary or grievance proceeding before a court or bar association) commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document,

against an **Insured** for a **Wrongful Act**, including any appeal therefrom; or

(2) a written request received by an **Insured** to toll or waive a statute of limitations relating to a potential **Claim** described in paragraph (1) above.

Except as may otherwise be provided in Section X. Reporting, a **Claim** will be deemed to have been first made when such **Claim** is commenced as set forth in this definition (or, in the case of a written demand or written request, including but not limited to a demand for arbitration, when such demand or request is first received by an **Insured**).

**Controlled Enterprise** means any business enterprise (other than an **Insured** or a business enterprise in which the ownership, control, operation or management by the **Insured** is exclusively in a fiduciary capacity as an administrator, conservator, executor, trustee, guardian, receiver or committee or in any similar fiduciary capacity incidental to the practice of law by an **Insured**) if at the time the **Wrongful Act** occurs:

(1) such business enterprise is a publicly traded entity and five percent (5%) or more of its issued and outstanding securities or voting rights to elect or appoint a board of directors or an equivalent governing body is owned or controlled, individually or collectively, by the **Firm** or by one or more **Insured Persons**;

Electronically Filed - St Louis County - January 08, 2015 - 10:42 AM

(2)    such business enterprise is not a publicly traded entity and twenty-five percent (25%) or more of the legal and/or equitable ownership of such enterprise is owned or controlled, individually or collectively, by the **Firm** or by one or more **Insured Persons**; or

(3)    such business enterprise is controlled, operated or managed by the **Firm** or by one or more **Insured Persons**.

**Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees, overhead or benefits of any **Insured**) incurred in defending any **Claim** and the premium for appeal, attachment or similar bonds; provided that the Company will have no obligation to procure or provide any bonds.

**Domestic Partner** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the **Firm**.

**Financial Impairment** means the status of a **Firm** resulting from:

(1)    the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate the **Firm**; or

(2)    the **Firm** becoming a debtor in possession under the United States bankruptcy law or the equivalent of a debtor in possession under the law of any other country.

**Firm** means the organization(s) engaged in the practice of law under the name(s) set forth in ITEM 1 of the Declarations, whether as a partnership, professional corporation or association, limited liability partnership, limited liability company or otherwise, and any predecessor firm(s) designated in ITEM 2 of the Declarations.

**Insured** means the **Firm** and any **Insured Person**.

**Insured Person** means any natural person or entity:

(1)    who was, now is or shall become a partner, principal, director, officer, shareholder or member of the **Firm**;

(2)    who was, now is or shall become designated (as evidenced in the **Firm's** records) as "counsel" or "of counsel" by the **Firm**; or

(3)    whose labor or service is engaged by and directed by the **Firm** to perform **Professional Services**, including full time, part-time, seasonal, contracted, leased and temporary employees, or volunteers,

but only while acting in his, her or its capacity as such.

**Intra Firm Representation** means **Professional Services** provided with the prior written consent of the **Firm** by an **Insured Person** to any other:

(1)    **Insured Person** or his or her estate in connection with estate planning matters, estate administration, trust administration or probate proceedings; or

(2)    **Insured Person** in connection with house or apartment closings, personal bankruptcies, incorporation of family businesses or personal injury litigation.

**Loss** means the amount that an **Insured** becomes legally obligated to pay as a result of any covered **Claim**, including but not limited to damages (including punitive or exemplary damages if and to the extent that such punitive or exemplary damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages, provided such jurisdiction has a substantial relationship to the relevant **Insured**, to the Company, or to the **Claim** giving rise to the damages), judgments, settlements, pre-judgment and post-judgment interest and **Defense Costs**. **Loss** does not include:

(1)     any costs incurred by an **Insured** to comply with any order for injunctive or other non-monetary relief, or to comply with an agreement to provide such relief;

(2)     any amount incurred by an **Insured** in the defense or investigation of any action, proceeding, demand or request that is not then a **Claim** even if such matter subsequently gives rise to a **Claim**;

(3)     taxes, fines, penalties (except as provided above with respect to punitive or exemplary damages), liquidated damages or the multiple portion of any multiplied damage award;

(4)     the cost of correcting, re-performing or completing any **Professional Services** or any amount which constitutes restitution, reduction, disgorgement, or set off or return of any fees or expenses paid to or charged by an **Insured** for **Professional Services**; or

(5)     any amount not insurable under the law pursuant to which this Policy is construed.

**Personal Injury** means libel, slander, disparagement, violation of rights of privacy, false arrest, detention or imprisonment, wrongful entry or eviction, malicious prosecution or abuse of process.

**Policy Period** means the period of time set forth in ITEM 3 of the Declarations, subject to any prior termination in accordance with Section XX. Termination of Policy.

**Pollutants** means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by the United States Environmental Protection Agency or any state, county, municipality or locality counterpart thereof. Such substances shall include, without limitation, solid, liquid, gaseous or thermal irritants, contaminants, smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials. **Pollutants** shall also include any air emission, odor, wastewater, oil or oil products, infectious or medical waste, asbestos or asbestos products and any noise.

**Pollution** means the actual, alleged or threatened exposure to, or generation, storage, transportation, discharge, emission, release, dispersal, escape, treatment, removal or disposal of **Pollutants** or any request, demand, order or regulatory or statutory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of any **Pollutants**, or any voluntary decision to do so.

**Professional Services** means services provided to others by an **Insured** as:

(1)     an attorney or notary public;

(2)     an administrator, conservator, executor, trustee, guardian, escrow agent, receiver or committee or in any similar fiduciary capacity incidental to the practice of law by the **Firm**;

(3)     an arbitrator or mediator;

(4)     a member, director or officer of any non-profit professional legal association, its governing board, or any of its committees;

(5)     a government affairs advisor or lobbyist;

Electronically Filed - St Louis County - January 08, 2015 - 10:42 AM

Electronically Filed - St Louis County - January 08, 2015 - 10:42 AM

(6)     a title insurance agent pursuant to a written agency agreement with a licensed title insurance company, but only when acting in such capacity for real estate transactions for which an **Insured** has provided services as an attorney; or

(7)     a paralegal or legal assistant, solely in connection with the performance of **Professional Services** by an **Insured**,

but only if such services are performed in the name of or on behalf of the **Firm** and some or all of the fee, if any, accruing from such services (regardless of whether such fee is actually collected) inures to the benefit of the **Firm**. **Professional Services** shall not include the provision of any financial or investment advice.

**Related Claims** means all **Claims** based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events.

**Wrongful Act** means any actual or alleged act, error or omission committed, attempted, or allegedly committed or attempted, solely in the performance of or failure to perform **Professional Services** by the **Firm** or by an **Insured Person** acting in his or her capacity as such on behalf of the **Firm**.

## III.     EXCLUSIONS

(A)     The Company shall not be liable for **Loss** on account of any **Claim**:

(1)     based upon, arising from, or in consequence of any fact, circumstance, situation, transaction, event or **Wrongful Act** that was the subject of any notice given under any policy of which this Policy is a direct or indirect renewal or replacement;

(2)     based upon, arising from, or in consequence of any fact, circumstance, situation, transaction, event or **Wrongful Act** occurring prior to the inception date of the first lawyers professional liability policy issued to the **Firm** by the Company which, prior to such inception date, any **Insured** knew or should have known might give rise to a **Claim**;

(3)     based upon, arising from, or in consequence of any demand, suit or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the Pending or Prior Date set forth in ITEM 7 of the Declarations, or the same or substantially the same fact, circumstance, situation, transaction, event or **Wrongful Act** underlying or alleged therein;

(4)     based upon, arising from, or in consequence of **Pollution**; provided that this exclusion shall only apply where the **Insured** is an actual or alleged owner, lessee or operator of the property in question;

(5)     for bodily injury, mental anguish, emotional distress (except mental anguish and emotional distress resulting from **Personal Injury**), sickness, disease or death of any person or damage to, destruction of or loss of use of any property (including software, data or other information that is in electronic form), whether or not it is damaged or destroyed; provided that this Exclusion shall not apply to any **Claim** directly arising out of **Professional Services** performed as a guardian, conservator or committee of any person or property;

(6)     for any actual or alleged violation by an **Insured** of the responsibilities, obligations or duties imposed on fiduciaries by the Employee Retirement Income Security Act of 1974, or any amendments thereto, or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world;

Electronically Filed - St Louis County - January 08, 2015 - 10:42 AM

(7)    by or on behalf of, in the name or right of, or based upon, arising from or in consequence of any **Wrongful Act** on the part of any **Insured** in connection with any **Controlled Enterprise**;

(8)    based upon, arising from, or in consequence of the service of any **Insured Person** in his or her capacity as a partner, member, principal, director, officer, shareholder, counsel, of counsel, or employee of any entity other than the **Firm**; provided that this Exclusion shall not apply where the **Insured Person** is acting in his or her capacity as a member, director or officer of any non-profit professional legal association, its governing board, or any of its committees with the consent of the **Firm**;

(9)    brought or maintained by or on behalf of any **Insured** in any capacity, other than as a client in connection with **Intra Firm Representation**;

(10)    for any actual or alleged infringement of any certification mark, copyright, patent or trademark (including collective or service marks), trade secret, trade name, trade dress, misappropriation of ideas or other intellectual property by an **Insured**; or

(11)    based upon, arising from, or in consequence of **Professional Services** performed as a title insurance agent where there allegedly exists:

(a)    any defect in title of which any **Insured** had actual knowledge as of the date the title insurance policy was issued by or through any **Insured**; or

(b)    any actual or alleged breach of underwriting authority by an **Insured**.

(B)    The Company shall not be liable for **Loss** on account of any **Claim** against an **Insured**:

(1)    based upon, arising from or in consequence of such **Insured** having gained in fact any profit, remuneration or advantage to which such **Insured** was not legally entitled; or

(2)    based upon, arising from or in consequence of any deliberately fraudulent or dishonest act or omission or any willful violation of any statute or regulation by such **Insured**, or any libel or slander committed by such **Insured** with knowledge of its falsity,

as evidenced by (i) any written statement or written document by any **Insured** or (ii) any judgment or ruling in any judicial, administrative or alternative dispute resolution proceeding.

---

## IV.    SPOUSES, ESTATES AND LEGAL REPRESENTATIVES

Coverage shall extend to **Claims** for the **Wrongful Acts** of an **Insured Person** made against:

(a)    the lawful spouse or **Domestic Partner** of such **Insured Person**, if named as a co-defendant with such **Insured Person** solely by reason of such person's status as a spouse or **Domestic Partner**, or such spouse or **Domestic Partner's** ownership interest in property that is sought by a claimant as recovery for an alleged **Wrongful Act** of such **Insured Person**; and

(b)    the estate, heirs, legal representatives or assigns of such **Insured Person** if such **Insured Person** is deceased or the legal representatives or assigns of such **Insured Person** if such **Insured Person** is incompetent, insolvent or bankrupt.

All terms and conditions of this Policy including, without limitation, the Retention Amount applicable to **Loss** incurred by the **Insured Person**, shall also apply to **Loss** incurred by the **Insured Person's** spouse, **Domestic Partner**, estate, heirs, legal representatives or assigns. The coverage provided by this Section IV. shall not apply with respect to any loss arising from an act or omission by an **Insured Person's** estate, heirs, legal representatives, assigns, spouse or **Domestic Partner**.

Electronically Filed - St Louis County - January 08, 2015 - 10:42 AM

**V.    OTHER INSURANCE**

This Policy shall be specifically excess over, and shall not contribute with, any other valid and collectible insurance, whether such other insurance is stated to be primary, contributory, excess (except insurance specifically in excess of this Policy), contingent or otherwise.  This Policy will not be subject to the terms of any other insurance.

**VI.   TERRITORY**

Coverage shall extend anywhere in the world.

**VII.  EXTENDED REPORTING PERIOD**

(A)    If the Company or the **Firm** terminates or does not renew this Policy, other than termination by the Company for nonpayment of premium, then the **Firm** shall have the right to purchase an Extended Reporting Period for either the twelve (12) month period, twenty-four (24) month period or thirty-six (36) month period beginning on the effective date of the termination or non-renewal of this Policy. This right to purchase an Extended Reporting Period shall lapse unless written notice of election to purchase the Extended Reporting Period, together with payment of the additional premium due, as set forth in ITEM 6 of the Declarations, is received by the Company within thirty (30) days following effective date of the termination or non-renewal of this Policy. The **Firm** may not change the option selected once that selection has been made.

(B)    If the Extended Reporting Period is purchased, then coverage otherwise afforded by this Policy will be extended to apply to **Loss** from **Claims** first made during such Extended Reporting Period and reported in accordance with Section X. Reporting, but only for **Wrongful Acts** committed or allegedly committed before the effective date of termination or nonrenewal or the date of any event described in Section XIII(B) Changes in Exposure, whichever is earlier.  The entire additional premium for the Extended Reporting Period shall be deemed fully earned at the inception of such Extended Reporting Period. Any **Claim** made during the Extended Reporting Period shall be deemed to have been made during the immediately preceding **Policy Period**. The Limit of Liability for the Extended Reporting Period shall be part of and not in addition to the applicable Limits of Liability for the immediately preceding **Policy Period**.

**VIII. LIMIT OF LIABILITY**

(A)    The Company's maximum liability for all **Loss** from each **Claim** first made during the **Policy Period** shall not exceed the each **Claim** Limit of Liability set forth in ITEM 4(A) of the Declarations, which amount shall be part of and not in addition to the amounts stated in ITEMS 4(B) and 4(C) of the Declarations.

(B)    The Company's maximum aggregate liability for all disciplinary and grievance proceedings against all **Insureds** shall not exceed the disciplinary and grievance proceedings Limit of Liability set forth in ITEM 4(B) of the Declarations, which amount shall be part of and not in addition to the amount stated in ITEM 4(C) of the Declarations.

(C)    The Company's maximum aggregate liability for all **Loss** from all **Claims** first made during the **Policy Period** shall not exceed the aggregate limit of liability set forth in ITEM 4(C) of the Declarations, regardless of the number of **Claims**.

Electronically Filed - St Louis County - January 08, 2015 - 10:42 AM

(D)     **Defense Costs** are part of and not in addition to the Limits of Liability set forth in ITEM 4 of the Declarations, and payment by the Company of **Defense Costs** shall reduce and may exhaust such Limits of Liability.

## IX.   RETENTION AMOUNT

The Company's liability under this Policy shall apply only to that part of covered **Loss** on account of each **Claim** (other than a disciplinary or grievance proceeding) which is excess of the applicable Retention Amount set forth in ITEM 5 of the Declarations. Such Retention Amount shall be depleted only by **Loss** otherwise covered under this Policy and shall be borne by the **Insured** uninsured and at their own risk. In the event that any **Insured Person** is unwilling or unable to bear the Retention Amount it shall be the obligation of the **Firm** to bear such Retention Amount uninsured and at its own risk. No Retention Amount shall be applicable to a disciplinary or grievance proceeding.

## X.   REPORTING

(A)     **Reporting of Claims and Wrongful Acts:**

(1)     If a **Claim** is made against any **Insured**, the **Insured** shall, as a condition precedent to exercising any right to coverage under this Policy, give to the Company written notice of such **Claim** as soon as practicable, but in no event later than the earliest of the following dates:

(a)     if this Policy is either terminated or not renewed by the **Firm**, and if no Extended Reporting Period is purchased, thirty (30) days after the effective date of such expiration or termination;

(b)     if the Extended Reporting Period is purchased, the expiration date of the Extended Reporting Period; or

(c)     if the Company sends written notice to the **Firm** pursuant to Section XX(A)(3) Termination of Policy, prior to the effective date of such termination.

(2)     If during the **Policy Period** an **Insured** becomes aware of a **Wrongful Act** which may subsequently give rise to a **Claim**, and during the **Policy Period** the **Insured**:

(a)     gives the Company written notice of such **Wrongful Act**, including a description of the **Wrongful Act** in question, the identities of the potential claimants, the consequences that have resulted or may result from the **Wrongful Act**, the damages that may result from the **Wrongful Act** and the circumstances by which the **Insured** first became aware of the **Wrongful Act**; and

(b)     requests coverage under this Policy for any **Claim** subsequently arising from such **Wrongful Act**,

then the Company will treat any such subsequently resulting **Claim** as if it had been made against the **Insured** during the **Policy Period**; provided that written notice of such **Claim** is then given to the Company in accordance with paragraph (A)(1) of this Section X.

(3)     All notices of **Claims** and **Wrongful Acts** required under this Section X must be sent in writing to the address set forth in Section XI Notice.

Electronically Filed - St Louis County - January 08, 2015 - 10:42 AM

(B)   **Interrelationship of Claims:**

All **Related Claims** will be treated as a single **Claim** made at the time the first of such **Related Claims** was made, or when the first of such **Related Claims** is treated as having been made in accordance with Section X(A)(2), whichever is earlier.

## XI.   NOTICE

(A)   All notices to the Company under this Policy of **Claims** or **Wrongful Acts** which could give rise to a **Claim** shall be given in writing addressed to:

> Attn:  Claims Department
> Chubb Group of Insurance Companies
> 82 Hopmeadow St.
> Simsbury, CT 06070-7683

(B)   All other notices to the Company under this Policy shall be given in writing addressed to:

> Attn:  Underwriting
> Chubb Group of Insurance Companies
> 3 Mountain View Road
> Warren, New Jersey 07059

(C)   Any notice given under XI(A) or XI(B) above shall be effective on the date of receipt by the Company at the address shown.

## XII.   DEFENSE AND SETTLEMENT

(A)   It shall be the duty of the **Insured** and not the duty of the Company to defend **Claims** made against the **Insured** and to retain qualified counsel of its own choosing with the Company's prior written consent, such consent not to be unreasonably withheld.

(B)   With respect to any **Claim** that appears reasonably likely to be covered in whole or in part under this Policy, the Company shall have the right and shall be given the opportunity to effectively associate with the **Insured**, and shall be consulted in advance by the **Insured** regarding the investigation, defense and settlement of such **Claim**, including but not limited to selecting appropriate defense counsel and negotiating any settlement. It shall not be unreasonable for the Company to withhold its consent to the representation of any **Insured** by another **Insured** or, if more than one **Insured** is involved in a **Claim**, to withhold its consent to separate counsel for one or more of such **Insureds**, unless there is a material actual or potential conflict of interest among such **Insureds**.

(C)   No **Insured** shall settle or offer to settle any **Claim**, incur any **Defense Costs**, or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the Company's prior written consent, which shall not be unreasonably withheld.  The Company shall not be liable for any settlement, **Defense Costs**, assumed obligation or admission to which it has not given its prior written consent.

(D)   If any **Insured** withholds consent to any settlement acceptable to the claimant in accordance with the Company's recommendation (a "Proposed Settlement"), then the Company's liability for all **Loss**, including **Defense Costs**, from such **Claim** shall not exceed the amount of the Proposed

Electronically Filed - St Louis County - January 08, 2015 - 10:42 AM

Settlement plus **Defense Costs** incurred up to the date of the **Insured's** refusal to consent to the Proposed Settlement of such **Claim**.

(E)    The Company shall have no obligation to pay **Loss**, including **Defense Costs**, or to defend or continue to defend any **Claim**, after the Company's applicable Limit of Liability with respect to such **Claim** has been exhausted by the payment of **Loss**. If the Company's Limit of Liability is exhausted by the payment of **Loss** prior to the expiration of this Policy, the Policy premium will be deemed fully earned.

The **Insured** agrees to provide the Company with all information, assistance and cooperation which the Company may reasonably require and agree they will do nothing that may prejudice the Company's position or its potential or actual rights of recovery.

The Company shall, upon written request, advance on a current basis **Defense Costs** owed under this Policy. As a condition of any payment of **Defense Costs** before the final disposition of a **Claim**, the Company may require a written undertaking on terms and conditions satisfactory to it guaranteeing the repayment of any **Defense Costs** paid on behalf of any **Insured** if it is finally determined that this Policy would not cover **Loss** incurred by such **Insured** in connection with such **Claim**.

---

**XIII.    CHANGES IN EXPOSURE**

(A)    Acquisition of Additional Attorneys

If, during the **Policy Period**, the total number of attorneys in the **Firm** increases by more than five percent (5%) as the result of the **Firm's** merger with or acquisition of any other law firm or any group of attorneys who practices together at another law firm, the **Firm** must promptly give the Company written notice thereof, and the Company will be entitled to impose such additional coverage terms and charge such additional premium in connection therewith as the Company, in its sole discretion, may require. Subject to the provisions of this paragraph, coverage shall only be provided for such acquired attorneys with respect to **Wrongful Acts** committed or allegedly committed after the date of such merger or acquisition.

(B)    Conversion of Coverage under Certain Circumstances

If, during the **Policy Period**:

(1)    all or substantially all of the **Firm's** assets are acquired by another organization or person or group of organizations or persons acting in concert;

(2)    **Financial Impairment** occurs; or

(3)    the **Firm** merges or consolidates into or with another entity such that the **Firm** is not the surviving entity,

then coverage provided by this Policy shall continue until termination, but only with respect to **Claims** for **Wrongful Acts** committed or allegedly committed prior to such event.

The **Firm** shall give written notice of all events under this Section XIII to the Company as soon as practicable together with such other information as the Company may request. If **Financial Impairment** occurs, the entire premium for this Policy will be deemed fully earned as of the effective date of such **Financial Impairment**.

Electronically Filed - St Louis County - January 08, 2015 - 10:42 AM

**XIV.    REPRESENTATIONS AND SEVERABILITY**

In issuing this Policy the Company has relied upon the statements, representations and information in the **Application**. All of the **Insureds** acknowledge and agree that all such statements, representations and information (i) are true and accurate, (ii) were made or provided in order to induce the Company to issue this Policy, and (iii) are material to the Company's acceptance of the risk to which this Policy applies.

In the event that any of the statements, representations or information in the **Application** are not true and accurate, this Policy shall be void with respect to any **Insured** who knew as of the effective date of the **Application** the facts that were not truthfully and accurately disclosed (whether or not the **Insured** knew of such untruthful disclosure in the **Application**) or to whom knowledge of such facts is imputed. For purposes of the preceding sentence:

(A)    the knowledge of any **Insured Person** who is a past, present or future member of the management committee, executive committee or similar governing body of the **Firm** shall be imputed to the **Firm;**

(B)    the knowledge of the person(s) who signed the **Application** for this Policy shall be imputed to all of the **Insureds**; and

(C)    except as provided in (A) above, the knowledge of an **Insured Person** who did not sign the **Application** shall not be imputed to any other **Insured**.

**XV.    VALUATION AND FOREIGN CURRENCY**

All premiums, limits, Retention Amounts, **Loss** and other amounts under this Policy are expressed and payable in the currency of the United States of America. If a judgment is rendered, a settlement is denominated or any element of **Loss** under this Policy is stated in a currency other than United States of America dollars, payment under this Policy shall be made in United States of America dollars at the rate of exchange published in The Wall Street Journal on the date the final judgment is reached, the amount of the settlement is agreed upon or the element of **Loss** is due, respectively.

**XVI.    SUBROGATION**

In the event of any payment under this Policy, the Company shall be subrogated to the extent of such payment to all the **Insured's** rights of recovery therefor, and the **Insured** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Company effectively to bring suit or otherwise pursue subrogation rights in the name of any **Insured**.

**XVII.    ACTION AGAINST THE COMPANY**

No action may be taken against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy. No person or entity shall have any right under this Policy to join the Company as a party to any action against any **Insured** to determine such **Insured's** liability nor shall the Company be impleaded by such **Insured** or legal representatives of such **Insured**.

Electronically Filed - St Louis County - January 08, 2015 - 10:42 AM

**XVIII.  FIRM RIGHTS AND OBLIGATIONS**

By acceptance of this Policy, the **Firm** acknowledges and agrees that it shall be considered the sole agent of and will act on behalf of each **Insured** with respect to: the payment of premiums and the receiving of any return premiums that may become due under this Policy; the negotiation, agreement to and acceptance of endorsements; the giving or receiving of any notice, including but not limited to giving notice of **Claim** or a notice of termination pursuant to Section XX Termination of Policy; and the receipt or enforcement of payment of a **Loss** (and the **Firm** shall be responsible for application of any such payment as provided for in this Policy). Each **Insured** acknowledges and agrees that the **Firm** shall act on its behalf with respect to all such matters.

**XIX.  ALTERATION AND ASSIGNMENT**

No change in, modification of, or assignment of interest under this Policy shall be effective except when made by a written endorsement to this Policy which is signed by an authorized employee of Chubb & Son, a division of Federal Insurance Company.

**XX.  TERMINATION OF POLICY**

(A)     This Policy shall terminate at the earliest of the following times:

    (1)     upon receipt by the Company of written notice of termination from the **Firm**; provided that this Policy may not be terminated by the **Firm** after the effective date of any event described in Section XIII Changes in Exposure (B);

    (2)     upon expiration of the **Policy Period** as set forth in ITEM 3 of the Declarations;

    (3)     twenty (20) days after receipt by the **Firm** of a written notice of termination from the Company based upon nonpayment of premium, unless the premium is paid within such twenty (20) day period; or

    (4)     at such other time as may be agreed upon by the Company and the **Firm**.

(B)     The Company shall refund the unearned premium computed at customary short rates if this Policy is terminated by the **Firm**. Under any other circumstances the refund shall be computed pro rata. Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of such termination, but such payment shall be made as soon as practicable.

**XXI.  BANKRUPTCY**

Except as provided in Section XIII. Changes in Exposure, bankruptcy or insolvency of any **Insured** shall not relieve the Company of its obligations nor deprive the Company of its rights or defenses under this Policy.

**XXII.  HEADINGS**

The descriptions in the headings and sub-headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

Electronically Filed - St Louis County - January 08, 2015 - 10:42 AM

**XXIII.    COMPLIANCE WITH APPLICABLE TRADE SANCTION LAWS**

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit the Company from providing insurance.

Electronically Filed - St Louis County - January 08, 2015 - 10:42 AM

*Lawyers Professional Liability*

# Schedule of Forms

To be attached to and form part of
Policy No.     8221-4933

Company:     Federal Insurance Company

Issued to:     Green Jacobson, P.C.

14-02-15088 (5/09 ed.)

14-02-9343 (6/04 ed.)

14-02-9344 (6/04 ed.)

14-02-9345RET (6/04 ed.)

14-02-9346 (6/04 ed.)

14-02-9465 (6/04 ed.)

Effective date of
this endorsement/rider: January 1, 2011        Federal Insurance Company

                                               Endorsement/Rider No. 1

                                               To be attached to and
                                               form a part of Policy No. 8221-4933

Issued to:  Green Jacobson, P.C.

---

LAWYERS PROFESSIONAL LIABILITY COVERAGE ENHANCEMENT ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1) Solely with respect to **Outside Director Wrongful Acts**, the Policy is amended as follows:

  (A) Section I., INSURING CLAUSE of the Policy is amended by adding the following INSURING CLAUSE:

    OUTSIDE  DIRECTORSHIP LIABILITY COVERAGE INSURING CLAUSE

    The Company shall pay **Loss** on behalf of an **Insured Person** on account of any **Outside Director Claim** first made against such **Insured Person** during the **Policy Period**, or if exercised, during the  Extended Reporting Period, for an **Outside Director Wrongful Act** committed by the **Insured Person** before or during the **Policy Period**.

  (B) Solely with respect to the coverage afforded by this Endorsement under the OUTSIDE DIRECTORSHIP LIABILITY COVERAGE INSURING CLAUSE, Section II., DEFINITIONS, is amended by adding the following definitions:

    **Outside Director Claim** shall mean any of the following:
    (a) (1) a written demand or written request for monetary damages or non-monetary relief;
       (2) a written demand for arbitration; or
       (3) a civil proceeding commenced by the service of a complaint or similar pleading; against an **Insured** for an **Outside Director Wrongful Act**, including any appeal therefrom; or

    (b) a written request received by an **Insured** to toll or waive a statute of limitations relating to a potential **Outside Director Claim** described in subparagraph (a) above.

    Except as may otherwise be provided in Section X. Reporting, an **Outside Director Claim** will be deemed to have been first made when such **Outside Director Claim** is commenced as set forth in this definition (or, in the case of a written demand or written request, including but not limited to a demand for arbitration, when such demand or request is first received by an **Insured**).

    **Outside Director Wrongful Act** shall mean any actual or alleged act, error or omission committed, attempted, or allegedly committed or attempted by an **Insured Person** solely in the performance of services by such **Insured Person** in his or her **Outside Director Capacity**.

14-02-15088 (05/2009)              Page 1

Electronically Filed - St Louis County - January 08, 2015 - 10:42 AM

**Outside Director Wrongful Act** shall not include the performance of **Professional Services** by an **Insured Person** for the **Outside Organization**.

**Outside Director Capacity** shall mean service by an **Insured Person** as a director, or trustee or equivalent position of an **Outside Organization**, but only during such time that such service is specifically directed or requested by the **Firm** or is performed with the advance written permission of the **Firm**.

**Outside Organization** shall mean any non-profit entity, community chest, fund or foundation exempt from federal income tax as any organization described in Section 501(c)(3), Internal Revenue Code of 1986, as amended.

(C) Solely with respect to the coverage afforded by this Endorsement under the OUTSIDE DIRECTORSHIP LIABILITY COVERAGE INSURING CLAUSE, the term **Loss** in Section II., DEFINITIONS of the Policy, is amended by adding the following:

**Loss** also shall not mean any salaries of officers or employees of the **Outside Organization(s)**.

(D) Solely with respect to the coverage afforded by this Endorsement under the OUTSIDE DIRECTORSHIP LIABILITY COVERAGE INSURING CLAUSE, the term **Claim** in Section II. DEFINITIONS of the Policy, is amended to include **Outside Director Claim**.

(E) Solely with respect to the coverage afforded by this Endorsement under the OUTSIDE DIRECTORSHIP LIABILITY COVERAGE INSURING CLAUSE, Section III., EXCLUSIONS of the Policy, is amended by adding the following Exclusions:

The Company shall not be liable for **Loss** (including **Defense Costs**), on account of any **Outside Director Claim**:

a. based upon, arising from, or in consequence of any **Outside Director Wrongful Act** committed prior to the **Policy Period** if the **Insured Person**, upon the first Inception Date of coverage with the Company, knew or could have reasonably foreseen that such **Outside Director Wrongful Act** might be the basis of a **Claim**;

b. by or on behalf of, or in the name or right of, any **Outside Organization** or any director, officer, trustee or employee of such **Outside Organization** against an **Insured Person**;

c. by an **Insured Person** while serving in an **Outside Director Capacity**, if such **Outside Director Wrongful Act** is committed, attempted, or allegedly committed or attempted, after the date:

   (i) such **Insured Person** ceases to hold a position with the **Firm** for any reason; or
   (ii) service by such **Insured Person** in an **Outside Director Capacity** ceases to be at the specific request of the **Firm**; or

d. based upon, arising from, or in consequence of any demand, suit administrative, regulatory or other proceeding against an **Outside Organization** occurring prior to, or pending as of the date the **Insured Person** first commenced serving in his or her **Outside Director Capacity**, of which such **Outside Organization** or any director, officer, or equivalent position with the **Outside Organization** received notice or otherwise had knowledge as of such date.

(F) Solely with respect to the coverage afforded by this Endorsement under the OUTSIDE DIRECTORSHIP LIABILITY COVERAGE INSURING CLAUSE, subparagraphs (A)(3) and (A)(8)

14-02-15088 (05/2009)                    Page 2

Electronically Filed - St Louis County - January 08, 2015 - 10:42 AM

under Section III., EXCLUSIONS of the Policy, are deleted and replaced respectively with the following:

(A)(3)  based upon, arising from, or in consequence of any demand, suit or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the Pending or Prior Date set forth in ITEM 7 of the Declarations, or the same or substantially the same fact, circumstance, situation, transaction, event or **Outside Director Wrongful Act** underlying or alleged therein;

(A)(8)  based upon, arising from, or in consequence of the service of any **Insured Person** in his or her capacity as a partner, member, principal, director, officer, shareholder, counsel, of counsel, or employee of any entity other than the **Firm**; provided that this Exclusion shall not apply to **Outside Director Claims** or where the **Insured Person** is acting in his or her capacity as a member, director or officer of any non-profit professional legal association, its governing board, or any of its committees with the consent of the **Firm**;

(G)  Solely with respect to the coverage afforded by this Endorsement under the OUTSIDE DIRECTORSHIP LIABILITY COVERAGE INSURING CLAUSE, Section V., OTHER INSURANCE, of the Policy is amended by adding the following provisions:

**OTHER INSURANCE AND INDEMNIFICATION; PRESUMPTION OF INDEMNIFICATION**

a.  All coverage for **Loss** from **Outside Director Claims** against **Insured Persons** for **Outside Director Wrongful Acts** will be specifically excess of, and will not contribute with, any other insurance available to such **Insured Persons** by reason of their service in **Outside Director Capacities**, and any indemnification by any person or entity other than the **Firm**, including any **Outside Organization**, available to such **Insured Persons** in connection with their service in **Outside Director Capacities**.

b.  The certificate of incorporation, charter, articles of association or other organizational documents of the **Firm** and each **Outside Organization**, including bylaws and resolutions, will be deemed to have been adopted or amended to provide indemnification to the **Insured Persons** to the fullest extent permitted by law.

(H)  Solely with respect to the coverage afforded by this Endorsement under the OUTSIDE DIRECTORSHIP LIABILITY COVERAGE INSURING CLAUSE, the Policy is amended by adding the following provision:

**NON-ACCUMULATION OF LIMITS**

If any **Loss** arising from any **Outside Director Claim** made against any **Insured Person** is insured under any other valid policy(ies) issued by the Company or any parent, subsidiary or affiliate of the Company ("Other Policy(ies)"), then:

(i)  any payment under such Other Policy(ies) on account of a **Outside Director Claim** also covered under this Policy shall reduce, by the amount of any such payment, the Company's Limit of Liability under this Policy; and

(ii)  the maximum aggregate limit of liability under the Other Policy(ies) for all **Loss**, including **Defense Costs**, in respect of such **Outside Director Claim** will not exceed the largest single available Limit of Liability under any applicable policy including this Policy or the Other Policy(ies);

Electronically Filed - St Louis County - January 08, 2015 - 10:42 AM

subject always to the maximum aggregate limit of liability as set forth below in paragraph (J) of this Endorsement. Nothing in this paragraph is intended to increase the limit available under the Other Policy(ies).

(I) Solely with respect to the coverage afforded by this Endorsement under the OUTSIDE DIRECTORSHIP LIABILITY COVERAGE INSURING CLAUSE, Section XIII., CHANGES IN EXPOSURE of the Policy is amended by adding the following provision:

Relinquishment of Positions

    a.    If an **Insured Person** ceases to hold a position with the **Firm** for any reason, the coverage provided to such **Insured Person** by this Policy shall continue, but only with respect to any **Outside Director Wrongful Act** committed or allegedly committed by such **Insured Person** prior to the date on which the **Insured Person** ceased to hold such position.

    b.    If an **Insured Person** ceases to hold a position as a director and/or officer and/or trustee of an **Outside Organization** for any reason, but continues to hold a position with the **Firm**, the coverage provided to such **Insured Person** under this Endorsement for **Outside Director Claims** made against such **Insured Person** for **Outside Director Wrongful Acts** shall continue, but only with respect to any **Outside Director Wrongful Act** committed or allegedly committed by such **Insured Person** prior to the date on which the **Insured Person** ceased to hold such position as a director and/or officer and/or trustee of such **Outside Organization**.

(J) The Company's maximum aggregate limit of liability for all **Outside Director Claims** made against any and all **Insured Persons** will be $500,000.00, which amount will be part of, and not in addition to, the Company's maximum aggregate Limit of Liability under this Policy for all **Loss** from all **Claims** for which this Policy provides coverage.

(2) Solely with respect to **Covered Subpoena Defense Expenses** and **Reputational Crisis Management Expenses**, the Policy is amended as follows:

(A) Section I., INSURING CLAUSE of the Policy is amended by adding the following INSURING CLAUSES:

    (i)    COVERED SUBPOENA DEFENSE EXPENSES LIABILITY COVERAGE INSURING CLAUSE

        The Company shall pay on behalf of the **Insured** a total of up to $35,000 on account of **Subpoena Defense Expenses** incurred by the **Insured** as a result of any and all **Covered Subpoenas** served on the **Insured** during the **Policy Period**.

    (ii)    REPUTATIONAL CRISIS MANAGEMENT EXPENSES LIABILITY COVERAGE INSURING CLAUSE

        The Company shall pay on behalf of the **Insured** a total of up to $10,000 on account of **Reputational Crisis Management Expenses** incurred by the **Insured** as a result of any and all **Reputational Crisis** events arising during the **Policy Period**.

(B) Solely for the purposes of the coverage afforded by this Endorsement under the COVERED SUBPOENA DEFENSE EXPENSES LIABILITY COVERAGE and the REPUTATIONAL CRISIS MANAGEMENT EXPENSES LIABILITY INSURING CLAUSES, Section II., DEFINITIONS, is amended by adding the following definitions:

    **Covered Subpoena** means a subpoena seeking documents, testimony or other information from any **Insured** in connection with **Professional Services** provided by any **Insured**, provided

that the subpoena does not arise out of any lawsuit to which any **Insured** is a party and that no **Insured** has or had ever been retained to provide **Professional Services**, including testimony, in connection with such lawsuit. Any notice that the **Insured** provides to the Company in connection with a **Covered Subpoena** shall be deemed notification of a **Claim** or **Wrongful Act** under Section X. REPORTING of the Policy.

**Reputational Crisis** means:
(a)   the departure from the **Firm** (whether by death, illness or incapacitation), of an **Insured Person**,
(b)   the potential dissolution of the **Firm**,
(c)   any act of workplace violence, or
(d)   any event which any **Insured** reasonably believes may have a materially adverse effect on an **Insured Person's** or the **Firm's** reputation.

**Reputational Crisis Management Expenses** means the reasonable and necessary cost of retaining, for a stipulated period of time with the prior approval of the Company, an independent public relations consultant and the cost of associated advertising and public relations media and activities. **Reputational Crisis Management Expenses** are part of and not in addition to the Limits of Liability set forth in ITEM 4 of the Declarations, and payment by the Company of **Reputational Crisis Management Expenses** shall reduce and may exhaust such Limits of Liability.

**Subpoena Defense Expenses** means reasonable legal fees and expenses incurred in responding to the **Covered Subpoena** or in seeking to quash or modify a **Covered Subpoena** on any appropriate ground, including but not limited to grounds of attorney-client privilege, attorney work product privilege or any applicable statutory or common-law privilege relating to the attorney-client or other applicable privilege. **Subpoena Defense Expenses** do not include any remuneration, salaries, wages, tips, expense, overhead, or benefits expenses of any **Insured**, except with the prior written consent of the Company. **Subpoena Defense Expenses** are part of and not in addition to the Limits of Liability set forth in ITEM 4 of the Declarations, and payment by the Company of **Subpoena Defense Expenses** shall reduce and may exhaust such Limits of Liability.

(C)   Solely for the purposes of the coverage afforded by this Endorsement under the COVERED SUBPOENA DEFENSE EXPENSES LIABILITY COVERAGE and the REPUTATIONAL CRISIS MANAGEMENT EXPENSES LIABILITY INSURING CLAUSES, Section IX., RETENTION AMOUNT, is deleted.

(3)   With respect to all coverages afforded under the Policy, including coverages provided by this Endorsement, Section XII., DEFENSE AND SETTLEMENT of the Policy, subparagraph (D) is deleted and replaced with the following:

(D)   If any **Insured** withholds consent to any settlement acceptable to the claimants in accordance with the Company's recommendation (a "Proposed Settlement"), then the Company's liability for all **Loss**, including **Defense Costs**, from such **Claim** shall not exceed:

(a)   the amount of the Proposed Settlement plus **Defense Costs** incurred up to the date of the **Insured's** refusal to consent to Proposed Settlement of such **Claim**; plus;

(b)   fifty percent (50%) of any **Loss**, including **Defense Costs**, in excess of the amount referenced in subparagraph (a) above, incurred in connection with such **Claim**; subject in all events to the applicable Retention Amount and the available Limit of Liability set forth in the Declarations. The remaining fifty percent (50%) of any **Loss**, including **Defense Costs**, in excess of the amount referenced in subparagraph (a) above will be borne by the **Insured** uninsured and at its own risk.

Electronically Filed - St Louis County - January 08, 2015 - 10:42 AM

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

Electronically Filed - St Louis County - January 08, 2015 - 10:42 AM

**ENDORSEMENT**

Effective date of
this endorsement: January 1, 2011

Company: Federal Insurance Company

Endorsement No. 2

To be attached to and
form a part of Policy No. 8221-4933

Issued to: Green Jacobson, P.C.

## NOTICE TO MISSOURI INSUREDS

This notice is provided in accordance with Bulletin 92-8 of the Missouri Department of Insurance.

Section 375.772.2(2) of the Missouri Property and Casualty Insurance Guaranty Association Act (the "Act") provides that claims covered by the Act do not include a claim by or against an insured of an insolvent insurer if that insured has a net worth of $25 million on the date the insurer becomes insolvent.

Section 375.775.1(1) of the Act provides that the Missouri Property and Casualty Insurance Guaranty Association's obligations include only the amount of each covered claim which is greater than $100 and less than $300,000. However, the Association will not:

a. Be obligated to an insured or claimant in excess of the limits of liability of the policy from which the claim arises; or

b. Return to the insured any unearned premium in excess of $10,000.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

14-02-9343 (Ed. 6/04)                    Page 1

Electronically Filed - St Louis County - January 08, 2015 - 10:42 AM

Effective date of
this endorsement: January 1, 2011

Company: Federal Insurance Company

Endorsement No. 3

To be attached to and
form a part of Policy No. 8221-4933

Issued to: Green Jacobson, P.C.

---

## MISSOURI AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is agreed that:

1.  The retroactive date will not be advanced during the **Policy Period** or any continuous renewal or reissuance of the Policy unless otherwise provided by endorsement requested by or agreed to by the **Firm**.

2.  The definition of "**Defense Costs**" set forth in Section II Definitions is amended to add the following at the end of such definition:

    "**Defense Costs** do not include the regular or overtime wages, salaries or fees of the directors, officers or employees of the Company."

3.  The first paragraph of the definition of "**Loss**" set forth in Section II Definitions is amended by deleting the parenthetical language therefrom.

4.  Paragraph (3) of the definition of "**Loss**" set forth in Section II Definitions is amended to read as follows:

    "(3)     taxes, fines, penalties, liquidated damages or the multiple portion of any multiplied damage award;"

5.  Section XX Termination of Policy (A)(2) is amended to add the following at the end of such paragraph (2):

    "provided that if the Company does not renew this Policy it will mail or deliver at least sixty (60) days' advance written notice of nonrenewal, stating the precise reason(s) for such nonrenewal, to the **Firm** at its last address known to the Company;"

6.  Section XX Termination of Policy (A)(3) is amended by deleting the "or" at the end of such paragraph (3) and adding the following:

    "provided that such notice of termination by the Company shall state the precise reason for such termination; or"

The Policy will be deemed to have been amended to the extent necessary to effect the purposes of this

Electronically Filed - St Louis County - January 08, 2015 - 10:42 AM

Amendatory Endorsement.

The regulatory requirements set forth in this Amendatory Endorsement shall supersede and take precedence over any provisions of the Policy or any endorsement to the Policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such Policy or endorsement provisions comply with the applicable insurance laws of the state of Missouri.

All other terms, conditions and limitations of this policy shall remain unchanged.

Authorized Representative

**ENDORSEMENT**

Effective date of
this endorsement:  January 1, 2011          Company:  Federal Insurance Company

                                            Endorsement No. 4

                                            To be attached to and
                                            form a part of Policy No. 8221-4933

Issued to:  Green Jacobson, P.C.

---

### RIDER TO APPLICATION - MISSOURI APPLICANTS ONLY

I, ACTING ON BEHALF OF THE **FIRM** AND ALL **INSUREDS**, UNDERSTAND AND ACKNOWLEDGE
THAT:

(1)  THE POLICY CONTAINS A DEFENSE WITHIN LIMITS PROVISION, WHICH MEANS THAT
     **DEFENSE COSTS** WILL REDUCE THE LIMITS OF LIABILITY AND MAY EXHAUST SUCH
     LIMITS COMPLETELY; AND

(2)  SHOULD **DEFENSE COSTS** EXHAUST THE LIMITS OF LIABILITY UNDER THE POLICY, THE
     **INSURED(S)** WILL BE LIABLE FOR ANY FURTHER **DEFENSE COSTS, LOSS**, EXPENSES
     AND DAMAGES; AND

(3)  THE POLICY DEFINES "**DEFENSE COSTS**" AS THAT PART OF **LOSS** CONSISTING OF
     REASONABLE COSTS, CHARGES, FEES (INCLUDING ATTORNEYS' FEES AND EXPERTS'
     FEES) AND EXPENSES (OTHER THAN REGULAR OR OVERTIME WAGES, SALARIES,
     FEES, OVERHEAD OR BENEFITS OF ANY **INSURED**) INCURRED IN DEFENDING ANY
     **CLAIM** AND THE PREMIUM FOR APPEAL, ATTACHMENT OR SIMILAR BONDS; PROVIDED
     THAT THE COMPANY WILL HAVE NO OBLIGATION TO PROCURE OR PROVIDE ANY
     BONDS.

Acknowledged on behalf of the **Firm** and all **Insureds**

By:_____
        As authorized representative of the **Firm** and all **Insureds**

14-02-9345 (Ed. 6/04) RET          Page 1

Effective date of
this endorsement: January 1, 2011

Company: Federal Insurance Company

Endorsement No. 5

To be attached to and
form a part of Policy No. 8221-4933

Issued to: Green Jacobson, P.C.

---

## NOTICE TO MISSOURI INSUREDS
## IMPORTANT NOTICE - INSURANCE COMPANY CONTACT INFORMATION

To obtain information or make a complaint:

You may call the Company's toll-free telephone number for information or to make a complaint at:

1-800-432-8168

You may also write to the Company at:

3 Mountain View Road
Warren, New Jersey  07059

ATTACH THIS NOTICE TO YOUR POLICY: This notice is for information only and does not become a part or condition of the attached document.

14-02-9346 (6/2004)                     Page 1

Electronically Filed - St Louis County - January 08, 2015 - 10:42 AM

**ENDORSEMENT**

Effective date of
this endorsement: January 1, 2011

Company: Federal Insurance Company

Endorsement No. 6

To be attached to and
form a part of Policy No. 8221-4933

Issued to: Green Jacobson, P.C.

---

**MISSOURI AMENDATORY ENDORSEMENT TO THE DECLARATIONS PAGE**
**RETROACTIVE DATE**

In consideration of the premium charged, it is agreed that:

1.  The Declarations Page is amended by adding the following:

    "Item 9.  Retroactive Date:                    Non-Applicable

    THE RETROACTIVE DATE SET FORTH IN ITEM 9 OF THE DECLARATIONS WILL NOT BE
    ADVANCED DURING THE **POLICY PERIOD** OR ANY CONTINUOUS RENEWAL OR
    REISSUANCE OF THIS POLICY UNLESS OTHERWISE PROVIDED BY ENDORSEMENT
    REQUESTED BY OR AGREED TO BY THE **FIRM**."

2.  No coverage will be available under the Policy for **Wrongful Acts** occurring prior to the
    Retroactive Date.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

14-02-9465 (7/2004 ed.)          Page 1

Electronically Filed - St Louis County - January 08, 2015 - 10:42 AM

**IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS**
**STATE OF MISSOURI**

**FILED**
NOV 1 2 2014

JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

SKMDV HOLDINGS
INC
Plaintiff(s),
vs.

GREEN JACOBSON PC

Defendant(s).

Cause No. **11SL-CC02664**

Division **4**

## JUDGMENT

This action came on for trial before the Court and a jury, the parties having appeared by their respective attorneys, the issues having been duly tried, and the jury having duly rendered its verdict for the plaintiff as follows:

On the claim plaintiff SKMDV Holdings Inc. for legal malpractice against defendant Green Jacobson PC, we, the undersigned jurors, find in favor of SKMDV Holdings Inc.

We the undersigned jurors, assess the damages of plaintiff SKMDV Holdings Inc. at $10,500,000.00.

It is therefore Ordered and Adjudged that the plaintiff SKMDV Holdings Inc. have and recover of the defendant Green Jacobson PC the sum of $10,500,000.00

Cost to be paid by the defendant Green Jacobson PC.

SO ORDERED:

Thomas J. Prebil
Judge, Division 4

DONE this 12th day of November, 2014
CC: Attorney of record



Electronically Filed - St Louis County - January 08, 2015 - 10:42 AM

# IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
## STATE OF MISSOURI

SKMDV Holdings, Inc.,   )
           )
  Plaintiff,     ) Cause No. 11SL-CC02664
           )
  vs.       ) Division 4
           )
Green Jacobson, P.C.,   )
           )
  Defendant.    )
           )

**FILED**

JAN - 6 2015

JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

## AMENDED JUDGMENT

  Counsel for Plaintiff and Defendant request an amendment to the Judgment previously entered in this case. Accordingly, it is the Order of the Court that paragraph four of the Judgment entered on November 12, 2014 be amended to read as follows:

  It is therefore Ordered and Adjudged that the plaintiff SKMDV Holdings, Inc. have and recover of the defendant Green Jacobson PC the sum of $10,500,000.00. Effective as of November 12, 2014 and until satisfaction is made, interest shall accrue under RSMo. §408.040 on the Judgment at the per annum interest rate of 5.25%.

  In all other respects the Judgment of November 12, 2014 shall remain in full force and effect.

SO ORDERED:

Thomas J. Prebil
Circuit Judge, Division 4
January 6, 2015

cc: Matthew D. Guletz
  Thomas J. Magee



EXHIBIT
C



**IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI**

Electronically Filed - St Louis County - January 08, 2015 - 10:42 AM

| Judge or Division: 4 | Case Number: 11SL-CC02664 |
|---|---|

| Petitioner(s): SKMDV Holdings Inc. | Please Issue: ☐ General Execution ☑ Garnishment ☐ Sequestration (Date File Stamp) |
|---|---|

v.

| | For: ☐ Real Estate Levy ☐ Replevin ☐ Vehicle Levy ☑ Other Personal Property Levy ☐ Bank Account ☐ Wages | Requested Return/End Date: For Executions: ☐ 30 Days ☐ 60 Days ☐ 90 Days |
|---|---|---|

| Respondent(s): Green Jacobson, P.C. | Date Judgment Entered Against Debtor: November 12, 2014 | For Garnishments: ☐ 30 Days ☑ 60 Days ☐ 90 Days ☐ 120 Days ☐ 150 Days ☐ 180 Days |
|---|---|---|
| | Original Amount of Judgment: 10,500,000.00 | |

## Execution/Garnishment/Sequestration Application and Order
**(This form must be completed in full or your request will be returned unprocessed.)**

| To (County/City of St. Louis): Cole County | Amount Remaining Unpaid (To be completed by Applicant) | |
|---|---|---|
| Debtor Name/Address: Green Jacobson, P.C. 7733 Forsyth Blvd., Suite 700, Clayton, MO 63105 | Principal | $ 10,500,000.00 |
| | Interest | $ |
| | Court Costs (paid by party/atty) | $ |
| | Service Fee Paid (Including this Application) | $ 30.00 |
| Debtor SSN (last four digits):  – | Attorney Fees | $ |
| Requested For: Petitioner | Date: November 17, 2014 | Taxes | $ |
| Attorney: Brian W. Hockett | Missouri Bar No.: 52984 | Child Support/Maint under 12 wks. | $ |

| A judgment was entered on the above referenced date and remains unsatisfied. | Child Support/Maint over 12 wks. | $ |
|---|---|---|
| The garnishor knows or has good reason to believe that the garnishee is indebted to debtor, that the garnishee is obligated to make periodic payments to debtor, or that the garnishee has control or custody of property belonging to debtor. | Subtotal | $ 10,500,030.00 |
| | To Be Completed by Clerk | |
| | Costs Due to Court | $ |
| Signature: _____ | Sheriff's Commission | $ |
| Address & Telephone Number: Thompson Coburn LLP, One US Bank Plaza | Service Fee Unpaid | $ |
| St. Louis, MO 63101; (314) 552-6461 | Total Due | $ |

| To be completed by Applicant: | |
|---|---|
| Garnishee Name and Address: Federal Insurance Company 15 Mountain View Rd. Warren, NJ 07059 | Instructions for Service: Include applicable instructions such as description of property; location of bank account; for a sequestration, include political subdivision, department, and name and title of disbursing officer. Serve: Federal Insurance Company, c/o Director of Insurance, 301 W. High Street, Rm 530, Jefferson City, MO 65101; Garnish all debts and obligations owed to Green Jacobson, P.C., including specifically all amounts owed to or on behalf of Green Jacobson, P.C. under Policy No. xxxx-4933. |
| Garnishee ID # (court use only): _____ | |

### Writ of Execution (To be completed by Court Clerk)
**The State of Missouri to the Sheriff of any County in the State of Missouri**

Because a judgment was entered against the above debtor in this court and there is a balance, accrued interest, and costs as stated above unpaid from said judgment, you are commanded to execute this writ by following the instructions on the reverse side of this writ and on the return date shown below to certify to this court how you executed this writ. **Remittance must include: Case Number & Execution/Garnishment Number.**

**Mail Funds To: Office of the Circuit Clerk, P.O. Box 16994, Clayton, MO 63105-6994**

| | Issue (County): | Document ID: |
|---|---|---|
| (Court Seal) | Date Issued: | Return Date: |
| | By (Clerk): | |

### Summons and Instructions to Garnishee
**To the Above-Named Garnishee:**

You are notified that I attach all goods, personal property, money, credit, bonds, bills, notes, checks, choses in action, or other effects and all debts owed to the above named debtor that are in your possession or charge, or under your possession or charge, or under your control from this time until the return date or a sufficient sum to satisfy the total amount of garnishment shown above. You are further notified to file your answers to the interrogatories served within ten days after the above return date.

| Date: | Sheriff/Server: |
|---|---|
| County: | Service Acknowledged By: |

OSCA (04-11) CV90                    1 of 2                    Rule 90.02, 452.350 RSMo
CCCDT228-WS  02/14

**EXHIBIT D**

Electronically Filed - St Louis County - January 08, 2015 - 10:42 AM

**Sheriff or Server's Return**

I certify that I have served this summons/writ.
- ☐ By delivering a copy of the summons/writ to the garnishee.
- ☐ By leaving a copy of the summons/writ at the dwelling place or usual abode of each of the garnishees with _____, a person of the garnishee's family over the age of 15 years.
- ☐ Other _____

Served in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____
Sheriff/Server

**Service Fees**

| | |
|---|---|
| Summons/Writ | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $_____ per mile) |
| Total | $_____ |

**Instructions to Sheriff/Server**

**General Execution**
    You are commanded to execute this writ by levying upon the debtor's property.

**Garnishment**
    You are commanded to summon the garnishee and attach the property subject to garnishment in the garnishee's possession or charge or under the garnishee's control between the time notice is served and the return date.

**Sequestration on Public Employer**
    You are commanded to take into your possession, any and all moneys, checks, drafts, warrants, vouchers, or other evidence of indebtedness, for salary, wages, fees or earnings for services rendered by said debtor now due and payable, or which shall hereafter become due and payable from the date of this writ to the return day thereof, now in the hand of said paying, disbursing or audit officer, or that shall come into his/her hands before the return day of this writ, or so much thereof as shall be necessary to satisfy the amount of judgment debt, interest, costs and fees due and allowed by law for serving this writ, and issue therefore your receipt; that you endorse in the name of said debtor, any and all such checks, drafts, warrants, vouchers, or other evidence of indebtedness, and convert the same into cash; that you serve a true copy of this writ upon the paying, disbursing or auditing officer; and that you certify to this court the manner in which you execute this writ.

**Applicable Provisions Relating to Garnishments**

525.030 RSMo
    2. The maximum part of the aggregate earnings of any individual for any workweek, after the deduction from those earnings on any amounts required by law to be withheld, which is subjected to garnishment may not exceed (a) twenty-five per centum, or, (b) the amount by which the individual's aggregate earnings for that week, after the deduction from those earnings of any amounts required to be withheld by law, exceed thirty times the federal minimum hourly wage prescribed by section 6(a)(1) of the Fair Labor Standards Act of 1938 in effect at the time of the earnings are payable, or (c) if the employee is the head of a family and a resident of this state, ten per centum, whichever is less.
    The restrictions on the maximum earnings subjected to garnishment do not apply in the case of any order of any court for the support of any person, and order of any court of bankruptcy under chapter XIII of the Bankruptcy Act or any debt due for any state or federal tax.
    For pay periods longer than one week, the provisions of subsection 2(a) and (c) of this section shall apply to the maximum earnings subjected to garnishment for all workweeks compensated, and under subsection 2(b) of this section, the "multiple" of the federal minimum hourly wage equivalent to the earnings subject to garnishment for one week shall be represented by the following formula: The number of workweeks or fractions thereof (x) x 30 x the applicable federal minimum wage. For the purpose of this formula, a calendar month shall be considered to consist of 4 1/3 workweeks, a semimonthly period to consist of 2 1/6 weeks. The "multiple" for any pay period longer than one week shall be computed in a manner consistent herewith.
    The restrictions on the maximum amount of earnings subjected to garnishment shall also be applicable to all proceedings involving the sequestration of wages of employees of all political subdivisions.
    The term "earnings" as used herein means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program.

    5. No employer may discharge any employee by reason of the fact that the employee's earnings have been subjected to garnishment or sequestration for any one indebtedness.
    6. Whoever willfully violates the provisions of subsection 5 of this section is guilty of a misdemeanor.

15 U.S.C. 1672 Restrictions on Garnishment – Definitions
    For the purposes of this subchapter (a) the term "earnings" means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program. (b) the term "disposable earnings" means that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld. (c) the term "garnishment" means any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt.

15 U.S.C. 1673 Restrictions on Garnishment – Maximum Allowable Garnishment
    (b)(2) The maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment to enforce any order for the support of any person shall not exceed:
    (A) where such individual is supporting his spouse or dependent child (other than a spouse or child with respect to whose support such order is used), 50 per centum of such individual's disposable earnings for that week; and
    (B) where such individual is not supporting a spouse or dependent child described in clause (A), 60 per centum of such individual's disposable earnings for that week; except that, with respect to the disposable earnings of any individual for any workweek, the 50 per centum specified in clause (A) shall be deemed to be 55 per centum and the 60 per centum specified in clause (B) shall be deemed to be 65 per centum, if and to the extent that such earnings are subject to garnishment to enforce a support order with respect to a period which is prior to the twelve-week period which ends with the beginning of such workweek.

**Partial List of Exempt Property**
    Certain property cannot be taken to satisfy a general execution, garnishment, or sequestration. This is called exempt property. A partial list of exempt property is noted below. However, for a complete listing of all exempt property, you should consult Sections 513.430 and 513.440, RSMo or speak with an attorney. Some items of exempt property include:

1. Household furnishings, household goods, wearing apparel, appliances, books, animals, crops or musical instruments held for personal use. However, the total value of the items cannot exceed $3,000;
2. A wedding ring, not to exceed $1,500 in value, or other jewelry, not to exceed a total value of $500;
3. "Tools of the trade", not to exceed a total of $3,000 in value;
4. Any motor vehicles, not to exceed $3,000 in value in the aggregate;
5. Any mobile home used as a principal residence, but not where the debtor has an ownership interest in the real estate on which the home sits, and not to exceed a value of $5,000;
6. Professionally prescribed health aids;
7. Any other property of any kind, not to exceed a total value of $600;
8. Any unmatured life insurance policies, other than a credit life insurance contract;
9. Social Security benefits, unemployment compensation, or public assistance benefits;
10. Veteran's benefits;
11. Disability, illness or unemployment benefits;
12. Alimony, support or separate maintenance, not to exceed $750 per month;
13. Certain assets held in trust by an employer for the benefit of an employee;
14. Certain retirement plans, health savings plans, or similar plans including an inherited account or plan qualified under the Internal Revenue Code; however, see note at the bottom; and
15. For head of household, $1,250 plus $350 for each unmarried dependent child under the age of 21 years or disabled dependent; however, 10% of any debt or income due the debtor is subject to execution, garnishment, or sequestration.

NOTE: No money or assets payable under a retirement plan qualifying under the Internal Revenue Code are exempt from execution, garnishment, or sequestration for the purpose of collecting child support or maintenance due under a valid judicial or administrative order.

In the
# CIRCUIT COURT
Of St. Louis County, Missouri

SKMDV Holdings Inc.
Plaintiff

vs.

Green Jacobson, P.C.
Defendant

For File Stamp Only

11/17/2014
Date

11SL-CC02664
Case Number

Execution/Garnishment #

## INTERROGATORIES TO GARNISHEE

Federal Insurance Company
15 Mountain View Rd.
Warren, NJ 07059
GARNISHEE

Green Jacobson, P.C.
JUDGMENT DEBTOR

**Instructions:** You are to answer interrogatories **under oath** during the ten (10) days immediately after the return date of the writ and mail the **original** to:

OFFICE OF THE CIRCUIT CLERK
St. Louis County
P.O. Box 16994
Clayton, MO 63105-6994

Remittance must include:
<u>CASE NUMBER AND</u>
<u>EXECUTION/GARNISHMENT</u>
<u>NUMBER</u>

and a **copy** to the attorney for the judgment creditor (or the judgment creditor individually if there is no attorney) stated on this form.

1. At the time of service of garnishment or at any time thereafter until the return date stated in the summons of garnishment, have you had in your possession or under your control any property, money (excluding wages, salary, and commissions), or other effects of the judgment debtor? If so, state what property, how much, or what value, and what money or effects.

   Answer:

2. At the time of service of the garnishment, or at any time thereafter until the return date stated in the summons of garnishment, did you owe the judgment debtor any money (including wages, salary, and commissions), or do you owe the judgment debtor any now?

   Answer:

   **If not yet due: When will it become due?**

   If amount owed judgment debtor is for wages, salary, or commission state:

   a. Amount owed after deductions required by law $ _____. (Deductions required by law are limited to federal, state, and city income and earnings taxes and FICA taxes.)

   b. Amount withheld pursuant to the garnishment $ _____.

3. Is the judgment debtor still within your employ? ☐ Yes ☐ No    If not, state the date his/her employment terminated.

   Answer:

4. At the time of service of the garnishment, or any time thereafter until the return date stated in the summons of garnishment, will you or have you since become or are you now bound in any contract to pay the judgment debtor money not yet due? ☐ Yes ☐ No   If so, state the amount to be paid out and when due and payable.

   Answer:

5. Do you know of any person or entity, other than the judgment debtor, who claims an ownership interest in any property, money or effects of the judgment debtor or any amounts owed to the judgment debtor as disclosed by you in answer to interrogatories 1, 2, and 4? If so, please provide the name and address of each such person or entity and identify the property, money or effects of the judgment debtor in which each such person or entity claims an interest?

   Answer:

6. If garnishee is a bank or other financial institution, state whether at the time the writ of garnishment was served or at any subsequent time did the debtor have funds on deposit in an account in which all funds are deposited electronically on a recurring basis and reasonably identified as being funds on deposit that are exempt from garnishment pursuant to Section 513.430.1 (10)(a), (b), or (c), RSMo.

☐ Yes ☐ No   If so, identify each account, state the reason for the believed exemption, and identify the entity electronically depositing those funds.

Answer:

The undersigned being duly sworn, on oath states that he/she has read the foregoing interrogatories and the answers given are true to the best of affiant's knowledge and belief.

Attorney for Judgment Creditor

Brian W. Hockett

Thompson Coburn LLP

One US Bank Plaza

St. Louis, MO  63101

_____
SIGNATURE OF GARNISHEE

The foregoing answers to interrogatories were subscribed and sworn to me on_____

NOTARY PUBLIC _____
My Commission expires: _____

Electronically Filed - St Louis County - January 08, 2015 - 10:42 AM

# NOTICE

## Rule 90.07(b) Answer to Interrogatories - Time for Filing

The garnishee shall file and serve verified answers to the interrogatories within ten (10) days after the return date of the writ.

## Rule 90.10 Discharge of Garnishee-Judgment in Garnishment

(a) If the garnishee admits in its answers to interrogatories that any property subject to garnishment is in the garnishee's possession, the garnishee, without further order of the court, shall pay or deliver such property into court no later than ten (10) days after the return date of the writ of garnishment or levy.  Timely payment of delivery of such property into court thereby discharges the garnishee from further liability on account of the property subject to garnishment so paid or delivered.

CCCDT67    Rev. 08/12

Electronically Filed - St Louis County - January 08, 2015 - 10:42 AM

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

FEDERAL INSURANCE COMPANY    )
    )
    Plaintiff,    )
    )    Cause No.
    vs.    )
    )    Division:
SKMDV HOLDINGS, INC.,    )
WILLIAMS & CONNOLLY LLP,    )
HEPLERBROOM, LLC, GREEN    )
JACOBSON, P.C., JACOBSON PRESS    )
& FIELDS, P.C., & JOHN DOE 1- 5    )
    )
    Serve at:    )
    )
    )
    Defendants.    )

## AFFIDAVIT OF MICHAEL D. RIDENOUR

I, Michael D. Ridenour, being of lawful age and having been duly sworn, depose and state as follows:

1.    I am over the age of eighteen (18) years of age and have no legal disability.

2.    The facts set forth herein are based upon my personal knowledge and belief.

3.    I am employed as a Senior Claims Officer – Claims Department by Chubb & Son, a division of Federal Insurance Company ("Chubb").

4.    Through my employment with Chubb, I am familiar with the terms and conditions of Federal Insurance Company Policy No. 8221-4933.

5.    I have reviewed the applicable Limits of Liability and have determined that "Defense Costs" as defined in Policy No. 8221-4933 have been paid in the amount of $2,441,759.98 as of the undersigned date.


EXHIBIT
E

6.    I have reviewed the applicable Limits of Liability and have determined that the proceeds remaining for this policy are $2,558,240.02 as of the undersigned date.

7.    As of the undersigned date, I acknowledge that "Defense Costs" from the law firms of HeplerBroom, LLC, Williams & Connolly, P.C. and Jacobson Press & Fields, P.C. remain outstanding.

FURTHER AFFIANT SAYETH NOT

**Michael D. Ridenour**

IN WITNESS WHEREOF, I have here unto subscribed my name and affixed my official seal this 7th day of January, 2015.

NOTARY PUBLIC

My commission expires:

**JAMES F. LINCOLN**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES MAY 31, 2019

2